
"UNDER SEAL"

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

AUG 19 2020

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 3:20cr290-MOC |
| v. | **BILL OF INDICTMENT** |
| **DINO CRNALIC** | Violations:<br>18 U.S.C. § 1014<br>18 U.S.C. § 1028A<br>18 U.S.C. § 1343<br>18 U.S.C. § 1344<br>18 U.S.C. § 1956(a)(1)(B)(i) |

THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

### Introductory Allegations

1. From no later than July 2017 through at least November 2019, DINO CRNALIC devised and executed schemes to defraud and to obtain money from various federally insured financial institutions and other entities by submitting fraudulent applications and supporting documentation and by making various false statements. As part of these schemes, CRNALIC stole the identity of at least one individual and used various falsified documents, including a falsified United States Passport. CRNALIC fraudulently obtained more than $800,000 through his schemes, and attempted to obtain hundreds of thousands of dollars more, which he used for, among other things, personal expenses.

### Relevant Entities and Individuals

2. CRNALIC was a resident of Charlotte, North Carolina, who formed various entities that engaged in business in the Charlotte area, including Suki Sushi LLC (SUKI), Suki Akor LLC (AKOR) and Surge Fitness Centers, LLC (SURGE).

3. SUKI was formed in or around September 2014. CRNALIC controlled the operations of SUKI.

4. AKOR was formed in or around January 2016. CRNALIC controlled the operations of AKOR.

5. SURGE was formed in or around October 2018. CRNALIC controlled the operations of SURGE.

6. The Small Business Administration (SBA) was an agency of the United States established by Congress to provide financial assistance to qualified small businesses. The SBA offered a variety of favorable loan programs for small businesses, including the "7(a) Loan Guaranty Program" that authorized the SBA to provide financial assistance to eligible, credit-worthy start-up and existing small businesses through loan guarantees to participating lending institutions.

7. The SBA did not loan money directly to small businesses under the 7(a) Loan Guaranty Program. Rather, when the SBA approved a loan under the 7(a) Loan Guaranty Program, it provided a guaranty to the lending institution that the SBA would repay a percentage of a qualified loan in the event that a borrower defaults. An SBA 7(a) loan transferred the risk of borrower non-payment from the lending institution to the SBA, up to the amount of the guaranty.

8. In order to have received an SBA guaranteed loan, a borrower must have met basic eligibility requirements. The 7(a) Loan Guaranty Program required borrowers to complete a "Certification as to Accuracy" statement attesting to the accuracy of all information provided by the borrower in connection with obtaining an SBA guaranteed loan. The Certification as to Accuracy warned that to knowingly provide false information in connection with obtaining an SBA guaranteed loan was a violation of federal law and subject to criminal penalties.

9. Fifth Third Bank (Fifth Third) was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC). Fifth Third was a participatory lender in the SBA 7(a) Loan Guaranty Program.

10. Branch Banking and Trust Company (BB&T) was a financial institution the deposits of which were insured by the FDIC.

11. C.P. was an individual residing in Raleigh, North Carolina who had previous business dealings with CRNALIC. As part of those business dealings, CRNALIC obtained personal information about C.P., including his address, date of birth, and social security number.

12. Geneva Capital LLC (Geneva) was an equipment financing company headquartered in Alexandria, Minnesota.

### The Fraudulent Sushi Restaurant Scheme

13. By no later than the summer of 2016, CRNALIC began the process of opening a new sushi restaurant in uptown Charlotte named Suki Akor.

14. As part of that process, in the summer of 2017, CRNALIC applied for a loan in the name of SUKI through Fifth Third under the SBA 7(a) Loan Guaranty Program.

15. In applying for the loan with Fifth Third, CRNALIC submitted numerous fraudulent documents and made various false statements. For example:

2

a. CRNALIC falsely claimed that C.P. was a partner in SUKI, when in fact C.P. had nothing to do with SUKI or the Suki Akor restaurant.

b. CRNALIC falsely claimed that AKOR was formed to so that SUKI could use the Akor name in the Suki Akor restaurant, when in fact, CRNALIC used AKOR to open up additional financial accounts and obtain additional credit.

c. CRNALIC submitted a falsified operating agreement for SUKI, which identified C.P. as a Member of SUKI and which contained the forged signature of C.P.

d. CRNALIC falsely claimed that he, C.P. and others had injected more than $600,000 in equity into SUKI, and then CRNALIC submitted falsified bank statements to support that false claim.

e. On or about August 2, 2017, CRNALIC submitted fraudulent loan applications on SBA Form 1919 that identified C.P. as a Member and owner of SUKI and falsely listed C.P.'s address as 214 N. Tryon St., Charlotte, N.C. One of the applications was signed by CRNALIC and one of them contained the forged signature of C.P. In signing his application, CRNALIC certified to the truth and accuracy of the information contained on the application and acknowledged that knowingly submitting false information was a violation of federal criminal law.

f. CNRALIC submitted other loan documents containing forged signatures for C.P., including an SBA "Unconditional Guarantee" dated on or about September 14, 2017.

g. CRNALIC sent and received emails using an email address purportedly belonging to C.P., when in fact CRNALIC controlled the email address.

h. CRNALIC submitted a Sworn Statement For Business Loan dated on or about September 14, 2017, which he signed on behalf of SUKI, representing that the proceeds of the loan will be used solely for the purpose of "Leasehold Improvements to a Building…; Equipment Purchase; Notes Payable Payment; Working Capital; Guarantee Fee Payment…."

16. On or about September 14, 2017, CRNALIC caused SUKI to obtain an SBA guaranteed loan through Fifth Third in the amount of approximately $745,200 (SBA Loan #1).

17. Contrary to his promises to Fifth Third and the SBA, CRNALIC diverted a portion of the proceeds from SBA Loan #1 to his own personal use, including among other things, for gambling, rent on an apartment in Uptown Charlotte, a car payment on a luxury vehicle, purchases at restaurants and bars throughout North Carolina, Florida and in Las Vegas, cash withdrawals, purchases from Ticketmaster and Stubhub, groceries, department store

purchases, car expenses including gas, tires, car washes and towing charges, purchases at Carolina Panthers Football games, and other personal expenses.

18. In order to conceal his improper use of the loan proceeds from SBA Loan #1, CRNALIC submitted false certifications and supporting documentation to Fifth Third. For example:

    a. On or about September 14, 2017, as part of the initial disbursements from SBA Loan #1, CRNALIC submitted invoices from Company 1 in the amount of approximately $253.414.54, which purported to be for the purchase of furniture and equipment. CRNALIC also provided false bank account information for Company 1 so that those invoices could be paid as part of closing. Contrary to his representations, the bank account information CRNALIC provided was not for Company 1, but rather for a bank account in the name of another entity that CRNALIC controlled.

    b. On or about November 14, 2017, in order to support a disbursement of approximately $29,223.20 from SBA Loan #1, CRNALIC submitted an invoice from Company 1, which purported to be for the purchase of equipment and for construction costs. CRNALIC caused Fifth Third to wire funds to a purported bank account of Company 1. Contrary to his representations, the bank account information CRNALIC provided was not for Company 1, but rather for a bank account in the name of another entity that CRNALIC controlled.

    c. On or about December 5, 2017, in order to support a disbursement of approximately $9,958.18 from SBA Loan #1, CRNALIC submitted an invoice from Company 1, which purported to be for construction costs. CRNALIC caused Fifth Third to wire funds to a purported bank account of Company 1. Contrary to his representations, the bank account information CRNALIC provided was not for Company 1, but rather for a bank account in the name of another entity that CRNALIC controlled.

    d. On or about December 13, 2017, in order to support a disbursement of approximately $10,689.38 from SBA Loan #1, CRNALIC submitted an invoice from Company 1, which purported to be for equipment and for construction costs. CRNALIC caused Fifth Third to wire funds to a purported bank account of Company 1. Contrary to his representations, the bank account information CRNALIC provided was not for Company 1, but rather for a bank account in the name of another entity that CRNALIC controlled.

    e. On or about December 21, 2017, in order to support a disbursement of approximately $4,805.78 from SBA Loan #1, CRNALIC submitted an invoice from Company 1, which purported to be for equipment and for construction costs. CRNALIC caused Fifth Third to wire funds to a purported bank account

of Company 1. Contrary to his representations, the bank account information CRNALIC provided was not for Company 1, but rather for a bank account in the name of another entity that CRNALIC controlled.

19. In or around January 2018, CRNALIC applied for an SBA line of credit in the name of SUKI through Fifth Third.

20. In applying for the SBA line of credit with Fifth Third, CRNALIC submitted numerous fraudulent documents and made various false statements. For example:

   a. On or about January 12, 2018, CRNALIC submitted fraudulent loan applications on SBA Form 1919 that identified C.P. as a Member and owner of SUKI and falsely listed C.P.'s address as 214 N. Tryon St., Charlotte, N.C. One of the applications was signed by CRNALIC and one of them contained the forged signature of C.P. In signing his application, CRNALIC certified to the truth and accuracy of the information contained on the application and acknowledged that knowingly submitting false information was a violation of federal criminal law.

   b. CNRALIC submitted other loan documents containing forged signatures for C.P., some of which had been notarized on or about January 29, 2018, through the use of a falsified United States Passport in the name of C.P.

   c. CRNALIC sent and received emails using an email address purportedly belonging to C.P., when in fact CRNALIC controlled the email address.

21. On or about January 29, 2018, CRNALIC caused SUKI to obtain a SBA guaranteed line of credit loan through Fifth Third in the amount of approximately $100,000 (SBA Loan #2).

22. Contrary to his representations about how the proceeds of SBA Loan #2 would be used, CRNALIC used a portion of the proceeds for personal use, including to fund a trip to Harrah's casino in New Orleans.

23. In or around March 2018, CRNALIC opened up a restaurant in uptown Charlotte named Suki Akor.

24. By no later than May 2018, the restaurant closed, and it ceased operations permanently. At the time of its closing, SUKI and AKOR had hundreds of thousands of dollars in unpaid obligations in addition to the SBA loans from Fifth Third. Most of those obligations, including the SBA loans from Fifth Third, were never paid.

25. In May 2018, Fifth Third attempted to schedule meetings with CRNALIC, C.P. and others regarding the SBA loans. CRNALIC again lied to Fifth Third about C.P.'s involvement and provided bogus excuses as to why C.P. could not attend the meetings.

## The Fraudulent Fitness Center Scheme

26. By no later than the fall of 2018, CRNALIC began the process of opening SURGE, a new fitness center located near Uptown Charlotte.

27. As part of that process, on or about October 17, 2019, CRNALIC applied for a $250,000 loan in the name of SURGE from BB&T.

28. In applying for the loan with BB&T, CRNALIC submitted numerous fraudulent documents and made various false statements. For example:

   a. CRNALIC falsely claimed that C.P. was a partner in SURGE, when in fact C.P. had nothing to do with SURGE.

   b. CRNALIC submitted falsified federal tax returns for C.P. to support the false claims that C.P. was a member of SURGE. The falsified federal tax returns also included a fictitious signature for H.P., who was purportedly the accountant who had prepared the returns.

   c. On or about October 17, 2019, CRNALIC submitted a fraudulent loan application that identified C.P. as an owner of SURGE and falsely listed C.P.'s address as 900 East Stonewall St., Charlotte, N.C. The application contained the forged signature of C.P., and listed C.P.'s date of birth and social security number.

   d. CRNALIC sent and received emails using an email address purportedly belonging to C.P., when in fact CRNALIC controlled the email address.

   e. CRNALIC submitted a fraudulent personal financial statement for C.P. that purported to identify C.P.'s assets, among other things.

29. After CRNALIC submitted the fraudulent loan application and supporting materials, BB&T requested to meet with CRNALIC and C.P. to discuss the loan further. After CRNALIC was advised that C.P. would have to attend the meeting in person, CRNALIC stopped pursuing the loan.

30. Also in connection with his efforts to open SURGE, CRNALIC applied for an equipment lease from Geneva on or about September 24, 2019.

31. In applying for the equipment lease with Geneva, CRNALIC, including in some cases via electronic communications through the instrumentalities of interstate commerce, submitted numerous fraudulent documents and made various false statements. For example:

   a. CRNALIC falsely claimed that C.P. was a member of SURGE, when in fact C.P. had nothing to do with SURGE.

    b. CRNALIC submitted a copy of C.P.'s driver license to support the false claims that C.P. was a member of SURGE.

    c. On or about September 24, 2019, CRNALIC submitted a fraudulent lease application that identified C.P. as a member of SURGE and identified C.P. as a personal guarantor of the lease. The application contained the forged signature of C.P.

32. On or about November 22, 2019, CRNALIC caused SURGE to enter into a lease agreement with Geneva for approximately $47,473 in fitness equipment. On or about that same date, CRNALIC submitted a fraudulent lease agreement to Geneva that, among other things, falsely listed C.P. as a member of SURGE and as a personal guarantor of the lease agreement. The lease agreement contained the forged electronic signature of C.P.

33. SURGE ultimately defaulted on the lease agreement with Geneva.

# COUNTS ONE and TWO
## 18 U.S.C. § 1344(2)
### (Financial Institution Fraud)

34. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through four, six through nine, eleven, and thirteen through twenty-five of this Bill of Indictment, and further alleges that:

35. On or about the dates set forth in the chart below, in Mecklenburg County, within the Western District of North Carolina and elsewhere, defendant,

## DINO CRNALIC

and others known and unknown to the Grand Jury, did knowingly and unlawfully execute and attempt to execute and cause to be executed a scheme and artifice to obtain monies, funds, credits, assets, and other property owned by and under custody and control of Fifth Third Bank, a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, and promises:

| Count | Date | Transaction |
|---|---|---|
| ONE | 09/14/2017 | Obtained SBA loan of approximately $745,200 through Fifth Third Bank |
| TWO | 01/29/2018 | Obtained SBA line of credit of approximately $100,000 through Fifth Third Bank |

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

# COUNT THREE
## 18 U.S.C. § 1028A(a)
### (Aggravated Identity Theft)

36. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through four, six through nine, eleven, and thirteen through twenty-five of this Bill of Indictment, and further alleges that:

37. From no later than July 31, 2017 through at least May 2018, in Mecklenburg County, within the Western District of North Carolina and elsewhere, defendant,

## DINO CRNALIC

did knowingly use, without lawful authority, a means of identification of another person during and in relation to the commission of one or more felony violations, to wit, by committing financial institution fraud, in violation of 18 U.S.C. § 1344, by obtaining SBA loans through Fifth Third Bank using C.P.'s name and other personal identifying information without authorization to do so.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

# COUNT FOUR
## 18 U.S.C. § 1956(a)(1)(B)(i)
### (Concealment Money Laundering)

38. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs two through four, six through nine, eleven, and thirteen through eighteen of this Bill of Indictment, and further alleges that:

39. On or about September 14, 2017, in Mecklenburg County, within the Western District of North Carolina and elsewhere, defendant,

**DINO CRNALIC**

knowing that the property involved in the financial transaction listed below represented the proceeds of some form of unlawful activity, knowingly conducted, and attempted to conduct, and caused to be conducted, and attempted to cause to be conducted, the financial transaction identified below, knowing that it was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of unlawful activity, to wit financial institution fraud as alleged in Count 1:

- A wire transfer in the amount of approximately $253,414.54 from Fifth Third Bank to PNC Bank Account x46318.

40. The financial transaction set forth above affected interstate commerce.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

10

Case 3:20-cr-00290-MOC-DSC    Document 3    Filed 08/19/20    Page 10 of 15

# COUNT FIVE
# 18 U.S.C. § 1014
# (False Statements to Bank in Connection With a Loan)

41. The Grand Jury incorporates paragraphs two, five, ten, eleven, and twenty-six through twenty-nine of this Bill of Indictment and further alleges that:

42. From no later than October 17, 2019 through on or about October 31, 2019, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

**DINO CRNALIC**

did knowingly make, and caused to be made, a false statement or report for the purpose of influencing in any way the action of Branch Banking and Trust Company, a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, in connection with an application for a business loan for SURGE, in that, among other things, CRNALIC made numerous false statements and submitted several falsified and fraudulent documents, concerning C.P., C.P.'s involvement with SURGE, and C.P.'s financial condition, when in truth and fact, as CRNALIC well knew, C.P. had no involvement with SURGE and the documents did not accurately reflect C.P.'s financial condition.

In violation of Title 18, United States Code, Sections 1014 and 2.

# COUNT SIX
## 18 U.S.C. § 1028A(a)
## (Aggravated Identity Theft)

43. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs two, five, ten, eleven, and twenty-six through twenty-nine of this Bill of Indictment, and further alleges that:

44. From no later than October 17, 2019 through on or about October 31, 2019, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

**DINO CRNALIC**

did knowingly use, without lawful authority, a means of identification of another person during and in relation to the commission of one or more felony violations, to wit, by making false statements to a financial institution in connection with a loan application, in violation of 18 U.S.C. § 1014, by applying for a loan from Branch Banking and Trust Company using C.P.'s name and other personal identifying information without authorization to do so.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

# COUNT SEVEN
## 18 U.S.C. § 1343
### (Wire Fraud)

45. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs two, five, eleven, twelve, twenty-six, and thirty through thirty-three of this Bill of Indictment, and further alleges that:

46. From no later than September 24, 2019 through at least November 22, 2019, in Mecklenburg County, within the Western District of North Carolina and elsewhere, defendant,

**DINO CRNALIC**

and others known and unknown to the Grand Jury, aiding and abetting one another, with the intent to defraud, did knowingly and intentionally devise the above described scheme and artifice to defraud Geneva and obtain money from Geneva by materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, did cause to be transmitted by means of wire communications in interstate commerce any writing, signal, or sound, in that, among other things, the defendant, sent and caused to be sent emails and electronic financial transactions in interstate commerce.

All in violation of Title 18, United States Code Sections 1343 and 2.

# COUNT EIGHT
## 18 U.S.C. § 1028A(a)
## (Aggravated Identity Theft)

47. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs two, five, eleven, twelve, twenty-six, and thirty through thirty-three of this Bill of Indictment, and further alleges that:

48. From no later than September 24, 2019 through at least November 22, 2019, in Mecklenburg County, within the Western District of North Carolina and elsewhere, defendant,

**DINO CRNALIC**

did knowingly use, without lawful authority, a means of identification of another person during and in relation to the commission of one or more felony violations, to wit, by committing wire fraud, in violation of 18 U.S.C. § 1343, by obtaining an equipment lease from Geneva by means of various false statements and using C.P.'s name and other personal identifying information without authorization to do so.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment;

b. All property involved in the violations set forth in Count Four or traceable to property involved in such violations; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $845,000, such amount constituting the proceeds of the violations set forth in this Bill of Indictment.

A TRUE BILL

R. ANDREW MURRAY
UNITED STATES ATTORNEY

_____
DANIEL RYAN
ASSISTANT UNITED STATES ATTORNEY

15

Case 3:20-cr-00290-MOC-DSC    Document 3    Filed 08/19/20    Page 15 of 15